UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| LUVELLE JAMES, </br></br> Plaintiffs, </br></br> v. </br></br> STEVEN MOORE, and ARAMARK UNIFORM & CAREER APPAREL, LLC, </br></br> Defendants. | Case No. 1:23-CV-0115-SNLJ |

## MEMORANDUM AND ORDER

Three matters are currently before the court, including two motions for summary judgment [Docs. 52 and 58], and a Motion to Strike Expert Report and Expert Testimony of Michael Connelly [Doc. 61]. Each matter is fully briefed and ripe for adjudication. For the reasons below, the Court will GRANT the motion for summary judgment sought in [Doc. 52]; GRANT in part and DENY in part the motion for summary judgment sought in [Doc. 58]; and GRANT in part and DENY in part defendants' motion to exclude the testimony and report of Michael Connelly [Doc. 61].

**I.   Background**

Plaintiff alleges that during a winter storm on January 6, 2022, plaintiff's car was struck on Interstate 55 by an Aramark truck being driven by Steven Moore. [Doc. 28 at 2-3]. As a result of this crash, plaintiff alleges injuries to his back, neck, and head. *Id*. at ¶ 23. He seeks damages for past and future medical bills, past and future mental and physical pain and suffering, past and future lost wages, the loss of earning capacity, and loss of

enjoyment of life. *Id*. at ¶ 24. Plaintiff brings three counts: negligence against both defendants (Count I); negligence per se pursuant to 49 C.F.R. § 392.14 against both defendants (Count II); and negligent hiring, training, and supervision by defendant Aramark (Count III). [Doc. 28]. Plaintiff also seeks punitive damages against both defendants. *Id*.

## II. Defendants' Motions for Summary Judgment [Docs. 52 and 58]

Defendants have filed two motions for summary judgment. The first, filed by defendant Aramark alone, seeks judgment on punitive damages claims against Aramark pursuant to the *McHaffie* Rule (Counts I and II) as well as judgment on the merits of Count III. The second, filed by both defendants Aramark and Moore, also seeks summary judgment on plaintiff's punitive damages claim against defendant Moore. It also seeks judgment on behalf of Moore on the merits of Count II.

### A. Legal Standard

Summary judgment is appropriate when "the movant shows there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(a). *See Poller v. Columbia Broadcasting System, Inc.*, 368 U.S. 464, 467 (1962). The burden is on the moving party. *City of Mt. Pleasant, Iowa v. Assoc. Elec. Co-op., Inc.*, 838 F.2d 268, 273 (8th Cir. 1988). After the moving party discharges this burden, the nonmoving party must do more than show that there is some doubt as to the facts. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The nonmoving party bears the burden of setting forth specific facts showing that there is sufficient evidence in its favor to allow a jury to return a verdict for it. *Anderson v. Liberty*

2

*Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005).

When ruling on a motion for summary judgment, the Court must review the facts in a light most favorable to the party opposing the motion and give that party the benefit of any inferences that logically can be drawn from those facts. *Buller v. Buechler*, 706 F.2d 844, 846 (8th Cir. 1983). The Court is required to resolve all conflicts of evidence in favor of the nonmoving party. *Robert Johnson Grain Co. v. Chem. Interchange Co.*, 541 F.2d 207, 210 (8th Cir. 1976). Although the Court needs to consider cited materials, "it may consider other materials in the record" as well. Fed. R. Civ. Pro. 56(c)(3).

### B.     Aramark's Summary Judgment Motion [Doc. 52]

When the Court's jurisdiction is based on diversity of citizenship, state law governs the substantive issues. *See, Am. Home Assur. Co. v. Pope*, 591 F.3d 992, 998-999 (8th Cir. 2010). In Missouri

> Once vicarious liability for negligence is admitted under *respondeat superior*, the person to whom negligence is imputed becomes strictly liable to the third party for damages attributable to the conduct of the person from whom negligence is imputed. The liability of the employer is fixed by the amount of liability of the employee.

*McHaffie v. Bunch*, 891 S.W.2d 822, 826 (Mo. 1995). Thus, "is improper to allow a plaintiff to proceed against the employer on any other theory of imputed liability." *Id*. In this case, defendant Aramark has admitted *respondeat superior* liability, and the McHaffie rule thus forecloses an award of punitive damages against Aramark based on an award of punitive damages against Aramark's employee, defendant Moore.

3

However, the McHaffie court qualified its holding, noting that

> It may be possible that an employer or entrustor may be held liable on a theory of negligence that does not derive from and is not dependent on the negligence of an entrustee or employee. . . .[I]t is also possible that an employer or an entrustor may be liable for punitive damages [that] would not be assessed against the employee/trustee.

Id.

This "exception" to the general rule was addressed in the case of *Wilson v. Image Flooring, L.L.C.*, 400 S.W.3d 386, 393 (Mo. App. 2013) in which, as in this case, plaintiff plead a count against a defendant employer for negligent hiring, training and supervision of the employee. The court of appeals held that punitive damages may be sought where "an employer's hiring, training, supervision, or entrustment practices can be characterized as demonstrating complete indifference or a conscious disregard for the safety of others." *Id*. The court explained that "then the plaintiff would be required to present additional evidence [against the employer], above and beyond demonstrating the employee's negligence, to support a claim for punitive damages." *Id*.

Of course, any claim for punitive damages must first be based on evidence supporting the underlying direct liability claim for negligent hiring, training and supervision. And second, the claim must be based on clear and convincing evidence that defendant acted either intentionally without just cause, "or acted with a deliberate and flagrant disregard for the safety of others." § 510.261(1) RSMo.

Plaintiff's argument against summary judgment sought by Aramark on Count III is simply that Aramark did not properly train Moore to comply with its own inclement weather policy. [Docs. 28 at 5 and 57 at ¶¶ 7, 9-12, and 18]. Plaintiff maintains that "the

4

maximum speed that its company drivers can operate at is half of the speed limit, which in this case the speed limit on I-55 was 70, thus the max speed that Steven Moore would have been able to drive would have been 35 miles per hour." [Doc. 57 at ¶ 7].  Plaintiff adds that Moore's supervisor was not aware of this policy and never advised Moore of it, and that both he and Moore thought the policy was that "drivers should always drive 45 miles per hour in snow and/or ice conditions, which is exactly what Steven Moore was doing on the morning of the crash." *Id.* at ¶¶ 7 and 9.  Because of this failure, plaintiff claims that Aramark "intentionally and willfully made the choice to send Defendant Steven Moore out on a route to make deliveries. . . [and that] Aramark knew that the risk of driving too fast on ice could hurt and kill people, yet Aramark took the risk anyway." [Doc. 56 at 10].

      Plaintiff's description of the situation is overwrought to say the least, and the allegations against Aramark do not come close to the punitive damages standard of acting intentionally without just cause or acting with a deliberate and flagrant disregard for the safety of others.  Indeed, plaintiff ignores Aramark's uncontroverted evidence that it provides training to its drivers, and Moore in particular, for compliance with the Federal Motor Carrier Safety Administration ("FMCSA") regulations for operating in inclement weather conditions. [Docs. 54 and 57 at ¶¶ 7-11].  Plaintiff also ignores that Moore was familiar with the FMCSA regulations requiring him to reduce his speed and exercise extreme caution in such conditions and that he was altogether qualified to operate his vehicle. *Id*.  And it bears mention, too, that the FMCSA does not include Aramark's company policy to operate at half of the speed limit. *See* 49 CFR § 392.14.

5

This is not a case in which Moore had demonstrated dangerous proclivities in operating his vehicle, or that he had a poor driving record, or any other aggravating circumstances that would put Aramark on notice that it should take action against him.  This case is just the opposite.  Moore was well-trained with a Class A license in the State of Missouri since before 2016 and had a spotless driving record with no accidents or speeding tickets.  In short, there is no evidence to support negligent training on the part of Aramark or any other negligent act on Aramark's part, much less clear and convincing evidence that would support punitive damages.  [Docs. 54 and 57].  Accordingly, Count III is dismissed.

### C.     Defendant Moore's Motion for Summary Judgment—Punitive Damages [Doc. 58]

Like the punitive damages allegations against Aramark, plaintiff alleges simply that defendant Moore was driving too fast for the inclement weather conditions.  [Doc. 71].  Plaintiff argues that Moore's agreed upon speed of 45 m.p.h. "violated Aramark policy and the standard of care contained within 49 CFR Sec. 392.14." [Doc. 71].  Initially, this Court notes that a violation of Aramark's internal policy does not establish any legally enforceable standard of negligence, much less a standard for punitive damages.  Furthermore 49 CFR 392.14 does not establish any legally enforceable standard for negligence, which is to exercise the highest degree of care, as in Count I, though it may be the basis for the negligence per se claim in Count II.  Sec. 392.14 provides in pertinent part:

> Extreme caution in the operation of a commercial motor vehicle shall be exercised when hazardous conditions, such as those caused by snow, ice, sleet, fog, mist, rain, dust, or smoke, adversely affect visibility or

6

traction. Speed shall be reduced when such conditions exist. If conditions become sufficiently dangerous, the operation of the motor vehicle shall be discontinued and shall not be resumed until the commercial motor vehicle can be safely operated.

The parties disagree about the weather conditions at the time of the accident. [Docs. 60 and 70 at ¶¶ 6-13, 16-18, 20]. Plaintiff alleges that it was snowy and icy on the highway and that road conditions were extremely dangerous. *Id*. Defendant Moore responds that he did not encounter such conditions until he hit a "white wall" of ice seconds before the wreck that prevented him from being able to stop. [Doc. 60-3 at 3]. This fact issue, of course, is a matter to be left for the jury. However, for summary judgment purposes, this Court is required to take the plaintiff's account of facts that are disputed. The question then is whether Moore's speed was so excessive that it constituted a "deliberate and flagrant disregard for the safety of others" under Sec. 510.261.(1) RSMo.

Turning to the circumstances of the accident, what is uncontroverted is 1) defendant Moore had indeed reduced his speed from the 70 mile per hour limit down to 45 miles per hour; 2) the actual collision was more of a sideswipe than a rear-ending; 3) plaintiff was able to swerve and enter a ditch in order to avoid rearending plaintiff's vehicle; 4) the investigating law enforcement officer did not issue any citations to Moore; 5) plaintiff did not report being injured at the time; 6) plaintiff James himself first noticed "the road being snow covered…when he stopped." [Docs. 60-3 at 3 and 70 at ¶¶ 3-4, 23, 25, 29-30].

Although defendant's conduct, as alleged by plaintiff, may constitute negligence, it does not constitute clear and convincing evidence of "deliberate and flagrant disregard for the safety of others." As the Missouri Supreme Court has held, "The remedy of punitive

7

damages is so extraordinary or harsh that it should be applied only sparingly." *Alcorn v. Union Pacific R.R. Co.*, 50 S.W.3d 226, 248 (Mo. Banc 2001). Moreover, "punitive damages can be awarded in a negligence action but only when the defendant knew or had reason to know that there was a high degree of probability that the action would result in injury." *Hoover's Dairy, Inc. v. Mid-Am Dairymen, Inc./Special Prod.*, 700 S.W. 2d 426, 436 (Mo. Banc 1985). And further, "The evidence must show that, at the time of the act complained of, the defendant had knowledge of a high degree of probability of injury to a specific class of persons." *Alack v. Vic Tanny Int'l of Mo., Inc.*, 923 S.W.2d 330, 339 (Mo. Banc 1996). Plaintiff's mere allegations of excessive speed in inclement conditions do not satisfy these standards, and the punitive damages claim against defendant Moore will be stricken.

### D.     Defendant Moore's Motion for Summary Judgment on Count II—Negligence Per Se

Plaintiff's Count II claims that defendant Moore is liable for negligence per se because he allegedly violated 49 CFR § 392.14. [Doc. 58]. As noted, that regulation requires that "extreme caution" be used by anyone operating a commercial motor vehicle when hazardous conditions like snow and ice "adversely affect visibility or traction. Speed shall be reduced when such conditions exist." 49 CFR § 392.14. The regulation continues that "if the conditions become sufficiently dangerous," trucks should be pulled over until they can safely operate once again. *Id.*

Defendants seek summary judgment on Count II because plaintiff fails to allege facts supporting that defendant Moore violated the regulation. First, defendant Moore

8

contends that there was no snow until he saw where traffic had stopped. [Docs. 59 at 2, 7; 60 at ¶¶ 6-13, 16-18, 20; and 70 at ¶¶ 6-13, 16-18, 20]. James disputes these alleged weather conditions. [Docs. 71 at 2, 4, 7-9; 69-4 at 3-8; and 69-1 at 4-6]. Although James and Moore disagree about whether it was snowing as Moore approached James's vehicle, James also admits that the first time he noticed "the road being snow covered" was "when [he] stopped." [Docs. 60-3 at 3;  71 at 2;  and 59 at 2, 7]. *See* [Docs. 60-2 at 8 and 69-4 at 3-8].

The parties do not dispute the speeds at which Moore reports traveling. [Docs. 60 at ¶¶ 29-30 and 70 at ¶¶ 29-30]. *See also* [Doc. 75 at 5]. Plaintiff disputes, however, that those speeds were safe, again citing 49 CFR § 392.14 and the Aramark policy that requires reducing speed by "at least one-half of the posted speed limit" in addition to exercising extreme caution during inclement weather. [Doc. 71 at 3]. Moore says that he was traveling at 45 m.p.h. (in a 70 m.p.h. speed limit zone) before he claims to have noticed the inclement weather at which point he used his jake brake to slow to 30 m.p.h., and he was going less than 10 m.p.h. when he struck James's vehicle. [Doc. 59 at 3]. Plaintiff counters that Moore was traveling 45 m.p.h. after he should have noticed the inclement weather, and thus plaintiff contends Moore should have reduced his speed earlier under both the regulation and Aramark's own policy. [Doc. 71 at 3].

Ultimately, this disputed fact precludes summary judgment on Count II, but only as to the claim of negligence per se pertaining to 49 CFR § 392.14.

**III.    Motion to Strike Expert Report [Doc. 61].**

9

Plaintiff retained Michael Connelly to serve as an expert witness on plaintiff's behalf. Mr. Connelly holds himself out as an expert in the field of transportation and trucking safety. Mr. Connelly offers two opinions. First, that defendant Moore failed to meet industry standards of care for a commercial driver in his operation of the Aramark truck on the day of the accident. Second, that defendant Aramark failed to meet industry standards of care for a motor carrier with respect to Aramark's training, supervision, and monitoring practices over its employee, Steven Moore. Defendants have moved to exclude Mr. Connelly's testimony and expert report.

### A. Legal Standard

To be admissible, Federal Rule of Evidence 702 requires that expert testimony (1) help the trier of fact determine facts at issue; (2) be based on sufficient facts or data; and (3) be the product of reliable principles and methods. In addition, the expert must have reliably applied those principles and methods to facts of the case. This Court must act as a "gatekeeper" in determining the admissibility of expert testimony and must "make a preliminary assessment of whether the proffered expert's methodology is both scientifically valid and applicable to the case." *Bland v. Verizon Wireless, (VAW) LLC*, 538 F.3d 893, 896 (8th Cir. 2007); *see also Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993). An expert's opinion should be excluded when it is "so fundamentally unreliable that it can offer no assistance to the jury." *Meterlogic, Inc. v. KLT, Inc.*, 368 F.3d 1017, 1019 (8th Cir. 2004) (quoting *Bonner v. ISP Techs., Inc.*, 256 F.3d 924, 929-30 (8th Cir. 2001)). Generally, the factual basis underlying an expert opinion goes to the credibility of the testimony, not the admissibility, and the opposing party may examine the factual basis for the opinion in cross-examination. *Nebraska*

*Plastics, Inc. v. Holland Colors Ams., Inc.*, 408 F.3d 410, 416 (8th Cir. 2005) (quoted case omitted). However, "if the expert's opinion is so fundamentally unsupported that it can offer no assistance to the jury, it must be excluded. *Id.* (internal quotation omitted). An expert opinion is fundamentally unsupported when it "fails to consider the relevant facts of the case." *Id.*

### B. Discussion

Defendants do not challenge Mr. Connelly's qualifications. Instead, defendants argue that Mr. Connelly's opinions are not based on sufficient facts to be reliable and helpful to the jury.

First, the Court notes that although defendants seek to exclude Mr. Connelly's opinions regarding defendant Aramark, the Court has granted summary judgment to defendant Aramark as to the stand-alone claim against it. The remaining claims against Aramark are based only on its vicarious liability. As a result, this Court need not address Connelly's opinions about Aramark's independent liability.

Next, the Court addresses Mr. Connelly's opinions regarding defendant Moore. Defendants offer four arguments in favor of excluding Mr. Connelly's opinions.

#### 1. Failure to consider deposition testimony

First, defendants contend that Mr. Connelly's opinions are unreliable because Connelly did not consider or even review the testimony of plaintiff James, and that Connelly therefore inaccurately states that the road conditions were disputed at the time of the accident. Defendants maintain that James admits the road was not snow-covered until he stopped on the interstate immediately before the accident. Similarly, defendants

11

point out, defendant Moore testified there was no snow or ice on the road until just before the accident.  Both parties therefore appear to agree that there was no snow on the roadway until just before the accident; however, what they mean by those statements could be different.  Plaintiff James's actual testimony is that "when I got to the major incident [and stopped the car], [the road] was snow covered because there wasn't – wasn't nothing moving."  [Doc. 62-2, James Dep. at 55.]

Defendants also assert that Mr. Connelly improperly relies on a Missouri Highway Patrol officer's testimony regarding the severity of the road conditions.  Defendants argue that the officer, Sgt. Karizamimba, could not have known the road conditions at the time of the accident because he did not arrive at the scene until sometime later.

Because Mr. Connelly bases his opinions on this allegedly incomplete or misleading information, defendants say his testimony should be excluded.  "As a general rule, the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination." *Hartley v. Dillard's, Inc.,* 310 F.3d 1054, 1061 (8th Cir.2002) (emphasis added) (quoting *Bonner v. ISP Tech., Inc.,* 259 F.3d 924, 929 (8th Cir. 2001)).  "However, it also is true that if the expert's opinion is so fundamentally unsupported that it can offer no assistance to the jury, it must be excluded.  An expert opinion that fails to consider the relevant facts of the case is fundamentally unsupported." *Nebraska Plastics*, 408 F.3d at 416.  Here, Mr. Connelly's opinion is not fundamentally unsupported.  Defendants' concerns about any "cherry-picked" facts may be addressed through cross-examination.

12

### 2. Other accidents on the interstate

Next, Mr. Connelly's opinion states that defendant Moore would have passed at least four accidents prior to the collision with plaintiff. Mr. Connelly admits he was mistaken, and the four accidents to which he refers actually happened after the parties' collision. Mr. Connelly may therefore not testify as to the existence of the four accidents.

### 3. Opinion regarding when to slow vehicle

Next, defendants address Mr. Connelly's opinion that defendant Moore waited too long to slow his vehicle. Defendants complain that Mr. Connelly improperly "assumes that Moore encountered hazardous weather conditions well before" the time and location of the accident. [Doc. 62 at 6.] Defendants quibble again with the testimony from the plaintiff, defendant, and the highway patrol officer. Again, as with the question of when the roads became snow-covered, the factual basis for Mr. Connelly's opinion is subject to cross-examination. The motion is denied on this point.

### 4. Citation for driving too fast

Finally, defendant objects to Mr. Connelly's report that defendant Moore was "cited" by Sergeant Karizamimba for driving too fast. Mr. Connelly now admits that defendant Moore received no citation or "ticket" for driving too fast for conditions. Mr. Connelly may therefore not testify that such a citation exists.

## C. Conclusion

In conclusion, this Court will grant in part and deny in part defendants' motion to exclude the testimony and report of Mr. Connelly.

## IV. Conclusion

Accordingly,

**IT IS HEREBY ORDERED** that defendant Aramark's motion for summary judgment [Doc. 52] is GRANTED.

**IT IS HEREBY ORDERED** that defendant Moore's motion for partial summary judgment [Doc. 58] is GRANTED in part and DENIED in part.

**IT IS HEREBY ORDERED** that defendants' motion to exclude the expert testimony and report of Michael Connelly [Doc. 61] is GRANTED in part and DENIED in part.

Dated this   14th   day of February, 2025.

STEPHEN N. LIMBAUGH, JR.
SENIOR UNITED STATES DISTRICT JUDGE